EXECUTRIX OF JOHN LEE, deceased,

*v.*

ADMINISTRATRIX OF MICHAEL DOLAN, deceased, et al.

1. An award cannot be extended beyond the things submitted; and even if the language of the submission be broad enough to cover a claim subsequently sought to be enforced, yet if it be clearly made to appear that the claim was not before the arbitrators, and was not passed upon by them, the award will not bar it.

2. A surviving partner who, in good faith and under an honest belief that he has a good defence, resists, by litigation, but unsuccessfully, the collection of a claim against the partnership estate, will be entitled to contribution for the reasonable expenses of the litigation as part of the expenses of winding up the partnership affairs.

On final hearing on original bill and answer, and cross-bill and answer, and proofs taken in open court.

13

*Mr. R. H. McCarter* and *Mr. Thomas N. McCarter*, for complainant.

*Mr. T. F. McCormick* and *Mr. Cortlandt Parker*, for defendants.

VAN FLEET, V. C.

This is a suit for contribution. Although it is brought by the representative of one deceased copartner against the representative of the other, it must be decided by the same legal principles which would control its decision if it had been brought by one copartner against the other.

John Lee and Michael Dolan, in September, 1869, formed a copartnership to do work as railroad contractors, not generally, but the particular work required by certain contracts. One of the contracts was for work on the New Haven, Middletown and Willimantic railroad. Dolan died intestate on the 1st of April, 1871. A suit was brought against Lee, as the surviving partner, in the superior court of the city of New York, in June, 1872. Judgment was subsequently entered therein, by default, in consequence of the inattention of the attorney employed by Lee to make defence. This judgment was opened in January, 1875, and Lee made defence. His defence was unsuccessful, and judgment was entered against him on the 2d of June, 1880. Appellate proceedings were afterwards taken, and the case removed to the court of appeals, where it was finally decided on the 31st of January, 1882, by a judgment of affirmance, by a vote of four judges to three. *Derham* v. *Lee, 87 N. Y. 599.* Lee's representative has since paid the judgment, and now, by this suit, asks that Dolan's representative and next of kin be compelled to make contribution of their moiety of the judgment and the expenses of the litigation.

Two defences are set up. First, that the complainant's right to contribution is barred by an award; and, second, that Lee, knowing that he had no defence to the claim on which the judgment was founded, causelessly, and from pure obstinacy, refused to pay a small sum in satisfaction of it, and should not, there-

fore, have contribution for more than one-half of the sum for which he could have settled the claim.

The first defence seems to be without the least foundation. An award or a report was made on the 29th day of August, 1873, by three persons, who, in the award, said that they were " the arbitrators in the matter of the accounts between John Lee and Ellen Dolan, administratrix of Michael Dolan, deceased." They found that Lee was indebted to the administratrix in a sum which they specified, and also that the partnership assets which remained in the hands of either of the parties, when collected or converted, should be equally divided between them. But who appointed them, or gave them authority to act as arbitrators, or what had been submitted to them, or upon what they were to arbitrate, does not otherwise appear. There can be no doubt, however, that the debt or claim which is the subject of the present controversy was not submitted to them, nor considered or passed upon by them. If the submission had embraced the accounts between the parties, or even all demands by either party against the other, it would not have extended to the present demand, for at the time the award was made this particular claim was unpaid and in dispute, and neither party had done anything in respect to it which gave him or her the least right to assert it against the other. Besides, it appears by a statement annexed to the award, just what claims and accounts were considered by the arbitrators, and also what claims and accounts entered into the computation by which they ascertained the balance or sum awarded to the administratrix. This claim is not among them.

An award cannot be extended beyond the things submitted. *Caldw. on Arb. 321.* And even if the language of the submission is broad enough to cover a claim subsequently sought to be enforced, yet if it is clearly made to appear that the claim was not before the arbitrators, and that they did not consider it, it has been held repeatedly that the award will not bar it. *King* v. *Savory, 8 Cush. 309 ; Webster* v. *Lee, 5 Mass. 334; Hodges* v. *Hodges, 9 Mass. 320 ; Smith* v. *Whiting, 11 Mass. 445 ; Bixby* v. *Whitney, 5 Me. 192 ; Buck* v. *Buck, 2 Vt. 417.*

The other defence must, I think, be tried by this rule : If Mr.

Lee, in refusing to compromise the claim and in resisting its collection, acted in good faith, believing he had a good defence to it—in other words, if he did what a man of ordinary prudence, acting for himself alone, would have done under similar circumstances—then he is entitled to contribution on the full amount paid, including reasonable expenses; but if, on the contrary, his conduct was the result of a foolish obstinacy; if, well knowing he had no defence to the claim, he causelessly refused favorable terms of compromise, and unrighteously resisted its collection, then he is entitled to none of the expenses of the litigation, and should only have contribution on the lowest sum for which the claim could have been compromised. Dolan contracted the debt on which the suit was founded. Lee did not know of its existence, or that it was asserted, until after Dolan's death. One William B. Jackson was the original creditor. He assigned his claim to Michael W. Derham, in whose name the suit in the superior court was brought. It was alleged that Dolan had employed Jackson to procure the contract for the work on the New Haven, Middletown and Willimantic railroad, and had agreed to give him, as his compensation for procuring the contract, two per cent. on all moneys earned under the contract. Lee defended on the ground that if such a contract had been made, it was Dolan's individual contract and not the contract of the firm. He swore, on the trial in the superior court, that he himself procured the contract for the work on the New Haven, Middletown and Willimantic railroad before Dolan and he became partners, and before there had been any negotiations between them on the subject of forming a copartnership. His statement was this: That he went to Middletown, Connecticut, and there went over and examined the ground on which the work was to be done, and at once made a contract to do the work; that while on his return journey home he met Dolan, who inquired of him whether he had obtained a contract, and on being told that he had, Dolan proposed that they should form a copartnership, he (Dolan) putting in his contract for the work which he was then doing on the New Jersey West Line railroad, and Lee putting in his contract which he had just made for

Lee's Executrix *v.* Dolan's Administratrix.

work on the New Haven, Middletown and Willimantic railroad, and that after some further talk they agreed to form a copartnership, but that prior to that time no suggestion or negotiation respecting the formation of a copartnership had ever passed between them. Taking these to be the facts which were before Lee's mind, and on which he was required to form a judgment whether to compromise the claim or not, I think it is impossible to say that in refusing to compromise he did not do what any prudent man, not too meek to yield to a demand which he knew to be unjust, would have done under like circumstances.

Moreover, the conduct of the claimant was strongly calculated to inspire suspicion of the justice of the claim. Lee was a man of considerable means, and could be compelled to pay all debts. The owner of the claim knew this, yet he offered to take $500 for it. The claim at that time amounted to over $2,500. The reason, the claimant says, he was willing to accept so trifling a sum in payment was, that he could not, at that time, get the evidence necessary to prove it. When and how he got the evidence, ultimately, to prove the claim, does not appear. The case was originally heard in the superior court by a referee. The reference was made February 26th, 1875, within less than two months after the judgment was opened, but the referee did not report until May 12th, 1880. The claimant allowed the case to linger before the referee for over five years.

Lee's conduct must be tried, not by what we know now, but by what Lee knew when he was called upon to act. Dolan's lips were sealed in death. Lee, so far as appears, never heard him speak of this claim. He had nothing to guide him, in deciding what he should do, but what he knew himself. Taking, as I think we must, what he said under oath as true, there can be no doubt that his conduct in refusing to compromise, and also in resisting the enforcement of the claim, was not only reasonable, but unavoidable. On Dolan's death the firm became dissolved, and in consequence of its dissolution it became the duty of Lee, as survivor, to collect in the assets of the firm, pay the debts of the firm, and divide the surplus with Dolan's representative. In the performance of these duties, Lee was a trustee

so far as Dolan's estate was concerned, and he was bound to see to it that no debt was allowed against the partnership estate which he knew, or had just reason to believe, was not justly chargeable against that estate. In this particular case, it is true, to have allowed the debt against the partnership estate, even if it was not properly chargeable to that estate, would have helped rather than harmed Dolan's estate, but that fact does not alter the rule of law. If Lee was satisfied, from facts within his own knowledge, that the claim was not a debt of the partnership, it was his duty to resist its collection. The proof is clear that he was so satisfied. The expenses he incurred in resisting the claim constitute part of the expenses of winding up the partnership estate, and must be borne and defrayed in the same manner that other expenses incurred for the same purpose are borne and defrayed.

The complainant is entitled to a decree, with costs.